# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

XI CHENG,

          Petitioner,

      v.

MARKWAYNE MULLIN, ET AL.,

          Respondents.

Case No. 5:26-cv-04344-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

**I.**

**INTRODUCTION**

On August 3, 2026, Petitioner Xi Cheng (A# 131-309-561) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 2 at 2-6.) On August 11, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), David Venturella, Acting Director of Immigration and Customs Enforcement ("ICE"), Jaime Rios, Field Office Director, Los Angeles, ICE, Todd Blanche, Attorney General of the United States, and Warden of the Adelanto ICE

Processing Center (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) On August 13, 2026, Petitioner filed a Traverse to the Answer (the "Traverse"). (Dkt. 9.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 6, 10, 11.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 2 at 19.) Respondents had the opportunity to dispute these facts, but declined to do so. (Dkt. 8.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of China. (Dkt. 2 at 5.) Petitioner has lived in the United States for seventeen years, has no criminal record, and is the beneficiary of a pending I-129 petition. (Id.) Petitioner first entered the United States in 2009 on an F-1 visa, and studied and was granted multiple student visas until obtaining a degree in accounting. (Id.) After graduating, Petitioner was granted work authorization via the "OPT" optical practical training program from 2018 to 2021. (Id.) In October 2019, Petitioner was granted his first H1B visa for a job as an accountant with one of the "Big Four" accounting firms. (Id.) Petitioner was subsequently approved for H1B transfers and extensions. (Id.)

Petitioner obtained his license as a Certified Public Accountant from the State of California after going through mandatory testing and background checks. (Id.) Almost eight months ago, on December 13, 2025, a new employer filed an I-129

2

Petition for a Nonimmigrant Worker for Petitioner, paying a hefty filing fee of $1,260.  (Id.)  That petition is still pending and has not been adjudicated.  (Id.)

Petitioner is married and his wife is in current H1B status.  (Id.)  One reason that Petitioner and his wife have worked so diligently to remain in the United States is because he and his family were strongly opposed to the one-child policy that had historically been in place in China.  (Id.)  Petitioner's mother was forced to abort what would have been a younger sibling when Petitioner was a child.  (Id.)  Petitioner and his wife have three U.S. citizen children, ages 9, 7, and 5.  (Id. at 5-6.)  Petitioner has not returned to China since 2016.  (Id. at 6.)

On July 20, 2026, Petitioner was at the Los Angles airport after disembarking a domestic flight from Chicago.  (Id.)  In the terminal, a law enforcement officer asked Petitioner to step to the side.  (Id.)  Seven to eight officers then surrounded Petitioner.  (Id.)  Petitioner saw badges on their waists, but the officers did not identify themselves or the purpose of the detention.  (Id.)  The officers handcuffed Petitioner behind his back and escorted him through the airport to an awaiting vehicle.  (Id.)  Petitioner was placed in a vehicle with two of the officers, one of whom spoke Petitioner's native Mandarin.  (Id.)  The officer indicated that Petitioner was being arrested as an "overstay," and Petitioner informed the officer that he had a pending I-129 petition.  (Id.)  The officer indicated that Petitioner should be okay and that it would get sorted out at the office.  (Id.)  Instead, Petitioner was booked and detained at Adelanto ICE Detention Center.  (Id.)  Petitioner has not been provided a warrant for his arrest or any other paperwork regarding under what authority Respondents are detaining him.  (Id.)

As set forth above, Respondents do not dispute any of the foregoing facts.  However, Respondents have provided a copy of an Order of the Immigration Judge dated August 7, 2026 that shows that Petitioner had a bond hearing and was granted bond in the amount of $35,000.  (Dkt. 8-2 at 2-3.)  Petitioner remains in custody because he has not posted the $35,000 bond.  (Dkt. 8 at 2; Dkt. 9 at 3.)

3

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that his detention violated his procedural due process rights under the Fifth Amendment.  (Dkt. 2 at 16.)  Petitioner's second claim for relief (Count Two) is that his detention violates his substantive due process rights under the Fifth Amendment.  (Id. at 16-17.)  Petitioner's third claim for relief (Count Three) is that his detention violates the Immigration and Nationality Act ("INA").  (Id. at 17.)  Petitioner's fourth claim for relief (Count Four) is that his detention violates the Administrative Procedure Act ("APA").  (Id. at 17-18.)  Petitioner seeks immediate release from custody, as well as prospective injunctive relief requiring a pre-deprivation bond hearing should Respondents seek to detain him in the future.  (Id. at 18.)  Petitioner further seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id. at 19.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's

4

discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally

5

related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner first entered the United States in 2009 on an F-1 visa and has lived in the United States for seventeen years. (Dkt. 1 at 5.) It is further undisputed that Petitioner has no criminal record and is the beneficiary of a pending I-129 petition. (Id.) Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past 17 years. See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion

6

retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest on July 20, 2026, without a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his

7

release.").

The fact that Petitioner received a post-deprivation bond hearing on August 7, 2026, (Dkt. 8-2 at 2-3), does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).  Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[1]  See, e.g., Ixchop Perez v.

---

[1] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor.  Under the (cont'd . . .)

McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not

---

second Matthews factor, the risk of erroneous deprivation is very high because an Immigration Judge has already determined that Petitioner is not entitled to release on bond.  (Dkt. 8-2 at 2-3.)  Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided.  See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

9

be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds that Petitioner has made such a showing here.  Petitioner has suffered an irreparable injury by being detained in violation of his due process rights, and would again if Respondents repeat such conduct.  Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty.  And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case.  See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).[3]

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA.  (Dkt. 2 at 19.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment

---

[2] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

[3] Respondents failed to respond to Petitioner's clearly presented procedural due process claim requesting both immediate release and prospective injunctive relief. (Dkt. 8 at 2.)  Therefore, Respondents have consented to the relief requested in the Petition.  See C.D. Cal. L.R. 7-12.

10

in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Xi Cheng (A# 131-309-561) ("Petitioner") from custody (subject only to conditions that were in place prior to his July 20, 2026 detention, if any) and return any confiscated property and documents to Petitioner upon release.  Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing.  The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED:  August 14, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

11